United States District Court
Southern District of Texas
**ENTERED**
September 30, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY DEON JOHNSON, (TDCJ–CID #2116179) Petitioner, | § § § § § § | CIVIL ACTION NO 4:21–cv–01028 |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| BOBBY LUMPKIN, Respondent. | § § § | |

## MEMORANDUM AND OPINION ON DISMISSAL

The motion for summary judgment by Respondent Bobby Lumpkin is granted. Dkt 11.

The petition for a writ of *habeas corpus* brought by Anthony Deon Johnson is dismissed with prejudice. Dkt 1.

### 1. Background

A jury found Johnson guilty of possession of a controlled substance with five prior felonies alleged for enhancement of punishment in January 2017 in Cause Number 15-07-07053, before the 9th Judicial District Court of Montgomery County, Texas. Dkt 12-32 at 7. The state summarized trial testimony in its brief on appeal as follows:

> Officer Dawn Leggett of the Conroe Police Department sought to execute an active warrant for the appellant's arrest (3 R.R. 101). Leggett noticed the appellant's vehicle parked outside of a house, so she called for backup before knocking on the front door (3 R.R. 102–03, 106). The appellant answered the door and quickly

retreated inside the house (3 R.R. 106–08). Leggett pursued the appellant into the house while two other CPD officers, Raymond Adams and "rookie" Officer Salas, followed (3 R.R. 30, 109).

As Leggett commanded the appellant to stop, he continued to flee inside the house, and Leggett could see a pill bottle and toilet paper in the appellant's hand (3 R.R. 109). The appellant threw down the pill bottle and toilet paper before Leggett managed to apprehend him in the kitchen (3 R.R. 110). Adams picked up the bottle, opened it, and saw what he knew from his training and experience to be crack cocaine (3 R.R. 42). Adams placed the bottle on the kitchen counter as he attempted to secure the scene (3 R.R. 42, 116–17).

Several other individuals were in the adjacent room, so the officers waited for other officers to arrive before performing a protective sweep of the house (3 R.R. 46). As they waited, Adams heard a loud crash that sounded like a breaking window, so Adams ran outside and pursued an individual who was fleeing the scene (3 R.R. 50–52). During this commotion, Leggett moved the appellant outside for safety purposes (3 R.R. 116–17). When the scene was secure and she came back inside, the pill bottle was gone, but officers found the same bottle still full of crack cocaine and displaying the same features in the room adjacent to the kitchen, where the other individuals had been (3 R.R. 117–18).

Subsequent analysis confirmed that the substance in the pill bottle was cocaine and weighed 23.67 grams (3 R.R. 225).

Dkt 12-5 at 7–8.

Johnson also pleaded "true" to prior convictions of (i) possession with intent to deliver/manufacture a controlled substance, (ii) possession of controlled substance, (iii) delivery of controlled substance, (iv) aggravated assault with a deadly weapon, and (v) possession of controlled substance. Dkt 12-32 at 5–6. The jury sentenced him to forty-five years in prison. Dkt 12-32 at 7.

The Ninth Court of Appeals affirmed his conviction in April 2018. *Johnson v State*, No. 09-17-00058-CR, 2018 WL 1631643, *3 (Tex App Beaumont, pet refd).

The Texas Court of Criminal Appeals granted Johnson's application to file an out-of-time petition for discretionary review. Dkt 12-23 at 2. That court refused Johnson's petition for discretionary review in July 2019. *In re Johnson*, 2019 Tex Crim App Lexis 679 (Tex Crim App July 3, 2019).

Johnson then filed his first state application for a writ of *habeas corpus* on March 26, 2019. Dkt 12-28 at 20. The Texas Court of Criminal Appeals dismissed it because it was filed prior to his conviction becoming final due to his out-of-time petition for discretionary review being granted in May 2019. Dkt 12-25 at 1. Johnson filed his second state application in May 2020. Dkt 12-32 at 39. The Texas Court of Criminal Appeals denied it without written order on the findings of the trial court without a hearing and on the court's own independent review of the record on March 10, 2021. Dkt 12-29 at 1.

Johnson filed the instant federal petition for a writ of *habeas corpus* in March 2021. Dkt 1. He contends that his conviction is void for the following reasons:

1) His due process rights were violated by police tampering with and fabricating evidence by failing to secure the crime scene;

2) His Fourteenth Amendment rights were violated by an unreasonable search and seizure, and by the police arresting him

3

without probable cause;

3) His trial counsel was ineffective for failing to hire a forensic expert to assist with his defense;

4) His trial counsel was ineffective for failing to properly question a juror during *voir dire*;

5) The prosecutor gave false and misleading impressions to the jury during opening and closing arguments;

6) His trial counsel was ineffective for failing to object to the prosecutor's misleading statements during opening and closing arguments;

7) His trial counsel was ineffective for failing to file a motion to suppress the pill bottle, which was not properly secured or preserved; and

8) His trial counsel was ineffective for failing to file a motion to suppress the cocaine, which was obtained through illegal search and seizure.

Dkt 1 at 6–14; Dkt 1-2 at 1–11.

2. Legal standard

Respondent moves for summary judgment, arguing that first, second, and fifth claims above are procedurally barred and that the remaining claims by Johnson lack merit and must be dismissed. Dkt 11 at 6–8. The trial transcript and other state-court records were attached to that motion. Dkt 12.

a. AEDPA

Johnson proceeds here *pro se*. A *pro se* petition is construed liberally and isn't held to the same stringent and rigorous standards as pleadings filed by lawyers. See *Martin v Maxey,* 98 F3d 844, 847 n 4 (5th Cir 1996); *Bledsue v Johnson,* 188 F3d 250, 255 (5th Cir 1999).

The Antiterrorism and Effective Death Penalty Act, 28 USC § 2241 *et seq*, governs this federal petition for *habeas corpus*. See *Woodford v Garceau*, 538 US 202, 205–08 (2003); *Lindh v Murphy*, 521 US 320, 335–36 (1997). This

4

has consequences for the standard of review as to disputed questions of both law and fact.

As to disputed questions of law, AEDPA bars federal *habeas corpus* relief based upon claims that were adjudicated on the merits by state courts unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 USC § 2254(d); see also *Early v Packer*, 537 US 3, 7–8 (2002); *Cobb v Thaler*, 682 F3d 364, 372–73 (5th Cir 2012). The Fifth Circuit holds that a state-court decision is *contrary to clearly established federal law* "if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Gray v Epps*, 616 F3d 436, 439 (5th Cir 2010), citing *Williams v Taylor*, 529 US 362, 404–08 (2002). And the Fifth Circuit holds that *an unreasonable application of federal law* means that the decision is "unreasonable, not merely wrong; even clear error will not suffice." *Escamilla v Stephens*, 602 F Appx 939, 941 (5th Cir 2015, *per curiam*), quoting *White v Woodall*, 572 US 415, 419 (2014). This is a high bar. To satisfy it, a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v Donald*, 575 US 312, 316 (2015), quoting *Harrington v Richter*, 562 US 86, 103 (2011).

As to disputed questions of fact, AEDPA precludes federal relief unless the adjudication by the state court of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 USC § 2254(d)(2); see also *Martinez v Caldwell*, 644 F3d 238, 241–42 (5th Cir 2011). A state

5

court's factual determinations are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 USC § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to implicit or "unarticulated findings which are necessary to the state court's conclusion of mixed law and fact." *Murphy v Davis*, 901 F3d 578, 597 (5th Cir 2018), quoting *Valdez v Cockrell*, 274 F3d 941, 948 n 11 (5th Cir 2001).

A federal court reviewing a petition for writ of *habeas corpus* may only consider the factual record that was before the state court when determining the reasonableness of that court's findings and conclusions. *Cullen v Pinholster*, 563 US 170, 180–81 (2011). And the Supreme Court instructs that it "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v Cain*, 576 US 305, 313–14 (2015), quoting *Wood v Allen*, 558 US 290, 301 (2010). To the contrary, § 2254(d)(2) requires the federal court to "accord the state trial court substantial deference." *Brumfield*, 576 US at 314.

A petitioner seeking a writ of *habeas corpus* must also demonstrate injury of a certain character. To warrant relief based on state-court error, a petitioner must show the alleged error had "substantial and injurious effect." *Brecht v Abrahamson*, 507 US 619 (1993); for example, see *Hughes v Quarterman*, 530 F3d 336, 345 (5th Cir 2008). This high bar isn't met where evidence of the defendant's guilt is overwhelming. *Burgess v Dretke*, 350 F3d 461, 472 (5th Cir 2003). There must be more than a mere reasonable possibility that it contributed to the verdict. *Brecht*, 507 US at 638. But where a court is confident the error caused grave harm—or even if the record is evenly balanced in this regard—the petitioner is entitled to relief. See *Fry v Pliler*, 551 US 112 n 3 (2007), citing *O'Neal v McAninch*, 513 US 432, 435 (1995); see also *Robertson v Cain*, 324 F3d 297, 305 (5th Cir 2003).

6

Finally, several other technical or procedural limitations can foreclose federal *habeas corpus* relief. For instance, a federal claim is foreclosed if it is barred because of a failure to comply with state procedural rules. See *Coleman v Thompson*, 501 US 722 (1991). It is likewise foreclosed if it seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced. See *Teague v Lane*, 489 US 288 (1989).

The scope of federal review on *habeas corpus* is limited by the "intertwined doctrines" of both exhaustion and procedural default. *Bledsue v Johnson*, 188 F3d 250, 254 (5th Cir 1999). These are intertwined because a failure to exhaust may also result in procedural default.

*As to exhaustion,* the Anti-Terrorism and Effective Death Penalty Act of 1996 requires that a person in custody pursuant to the judgment of a state court generally must exhaust available state remedies prior to filing a petition for a writ of *habeas corpus* in federal court. To meet this requirement "the petitioner must afford the state court a 'fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Bagwell v Dretke*, 372 F3d 748, 755 (5th Cir 2004), quoting *Anderson v Harless*, 459 US 4, 6 (1982). This means that a petitioner must present his claims in a procedurally proper manner to the highest court of criminal jurisdiction in the state, which in Texas is the Texas Court of Criminal Appeals. See *O'Sullivan v Boerckel*, 526 US 838, 844–45 (1999); *Richardson v Procunier*, 762 F2d 429, 432 (5th Cir 1985).

A Texas prisoner may exhaust state court remedies by filing a direct appeal from a judgment of conviction, followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals. See TRAP 68.1; TCCP art 11.07. A prisoner may also file an application for a writ of *habeas corpus* under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is sent to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary. See TCCP art 11.07, § 3(c). Texas prisoners must typically

7

exhaust state remedies "by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral" review under Article 11.07. *Busby v Dretke*, 359 F3d 708, 723 (5th Cir 2004).

*As to procedural default,* if a petitioner fails to exhaust state remedies (or to satisfy an exception to exhaustion) and the state court would find the claims procedurally barred, then "there is a procedural default for purposes of federal habeas." *Coleman v Thompson*, 501 US 722, 735 n 1 (1991); *Williams v Thaler*, 602 F3d 291, 305 (5th Cir 2010), quoting *Bagwell v Dretke*, 372 F3d 748, 755 (5th Cir 2004). Thus, in line with the text of § 2254(b)(2), a district court reviewing the claims of a *habeas* petitioner who fails to satisfy the exhaustion requirement may dismiss the action on either procedural-default grounds or on the merits. *Trevino v Davis*, 829 F3d 328, 341 (5th Cir 2016). This means that procedural default functions as a "corollary to the habeas statute's exhaustion requirement," similarly constricting the scope of federal review on *habeas* corpus. *Dretke v Haley*, 541 US 386, 392–93 (2004); see also *Coleman*, 501 US at 729.

Federal review of a claim on *habeas corpus* is also procedurally barred if the last state court to consider the claim expressly and unambiguously bases its denial of relief on a state procedural default. *Davila v Davis*, 137 S Ct 2058, 2064 (2017); *Coleman v Thompson*, 501 US 722, 729 (1991). But to qualify, that state-law procedural ground must provide an "independent and adequate ground for dismissal." *Rocha v Thaler*, 626 F3d 815, 820 (5th Cir 2010), quoting *Nobles v Johnson*, 127 F3d 409, 420 (5th Cir 1997). As used, *independent* means "independent of the merits of the federal claim." Id at 821, quoting *Finley v Johnson*, 243 F3d 215, 218 (5th Cir 2001). And *adequate* means that the rule is "strictly or regularly applied evenhandedly to the vast majority of similar claims." Ibid, quoting *Amos v Scott*, 61 F3d 333, 339 (5th Cir 1995). See *Ex parte Grigsby*, 137 SW3d 673, 674 (Tex Crim App 2004) ("[W]here an applicant challenges the sufficiency of the

8

evidence on an application for a writ of habeas corpus, and [the TCCA] subsequently dispose[s] of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable."); see also *Reed v Thaler*, 428 F Appx 453, 454 (5th Cir 2011, *per curiam*); *West v Johnson*, 92 F3d 1385, 1398 n 18 (5th Cir 1996). Moreover, this state procedural default is an independent and adequate state law ground to invoke the procedural bar insofar as it is not based on federal law, and Texas courts have routinely held that a sufficiency claim is not cognizable on state *habeas* review. See *Ex parte Knight*, 401 SW3d 60, 64 (Tex Crim App 2013).

A petitioner may obtain federal review of a defaulted claim by showing cause for the default and actual prejudice as a result of the alleged violation of federal law, or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 US at 750; see also *Trevino v Thaler*, 569 US 413, 421 (2013). As used, *cause* must be something external to the petitioner that can't be fairly attributed to him. *McCowin v Scott*, 67 F3d 100, 102 (5th Cir 1995). And *actual prejudice* requires a petitioner to demonstrate that "the error had substantial and injurious effect or influence in determining the" outcome of litigation. *Barrientes v Johnson*, 221 F3d 741, 756 (5th Cir 2000), quoting *Brecht v Abrahamson*, 507 US 619, 637 (1993).

A petitioner may also obtain federal review of a defaulted claim by demonstrating that failure to consider the claim will result in a *fundamental miscarriage of justice.* This exception applies where the petitioner is actually innocent of the crime of which he was convicted. *Rocha*, 619 F3d at 402; *Sawyer v Whitley*, 505 US 333, 339–40 (1992). A showing of actual innocence requires a petitioner to produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"—sufficient to persuade the district court that "no juror, acting

9

reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v Delo*, 513 US 298, 324, 329 (1995); see also *McQuiggin v Perkins*, 569 US 383, 386 (2013); *House v Bell*, 547 US 518, 536–38 (2006). To be clear, a claim of actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v Collins*, 506 US 390, 404 (1993). It isn't a stand-alone claim. Id at 400.

b.   AEDPA and Rule 56

The Fifth Circuit holds, "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v Johnson*, 202 F3d 760, 764 (5th Cir 2000). But where Rule 56 and the rules governing *habeas corpus* petitions conflict, the latter governs. *Austin v Davis*, 647 F Appx 477, 483 (5th Cir 2016, *per curiam*); see also *Torres v Thaler*, 395 F Appx 101, 106 n 17 (5th Cir 2010, *per curiam*) (citations omitted). As such, the presumption of correctness mandated by § 2254(e)(1) "overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." *Austin*, 647 F Appx at 483 (citation omitted); cf *Anderson v Liberty Lobby*, 477 US 242, 255 (1986) (stating typical summary-judgment standard in civil cases).

An articulated opinion from a state court has natural pertinence to resolution of disputed questions of both law and fact on *habeas corpus* review. But some state-court decisions reach a conclusion without such articulation. What then? The Fifth Circuit holds, "When faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter." *Jackson v Johnson*, 194 F3d 641, 651 (5th Cir 1999), quoting *Lott v Hargett*, 80 F3d 161, 164 (5th Cir 1996). This is because a presumption exists that later, unexplained orders rejecting a federal claim are decided on the same basis as earlier, reasoned orders resting upon the

same ground. *Ylst v Nunnemaker*, 501 US 797, 803 (1991). This also accords with decisional practice of the Texas criminal courts. The Texas Court of Criminal Appeals holds that a statement of *denial* of a state application for a writ of *habeas corpus* without written order signifies an adjudication that the court below reached the correct ruling on the merits (as compared to a statement of *dismissal*, which means only that the claim was declined on grounds other than the merits). *Ex parte Torres*, 943 SW2d 469, 472 (Tex Crim App 1997, *en banc*); see also *Singleton v Johnson*, 178 F3d 381, 384 (5th Cir 1999).

Even so, the state court's decision will at times be unaccompanied by explanation, with no level of review having issued a reasoned opinion. The Supreme Court holds in such situations that "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 US at 98; see *Salts v Epps*, 676 F3d 468, 480 n 46 (5th Cir 2012) (applying *Harrington*).

    3.   Analysis

      a.   Claims 1, 2 & 5: Procedural bar

Petitioners cannot dole their claims out individually in repeated attempts. *Ex Parte Garner*, 959 SW2d 189, 192 (Tex Crim App 1996) (*en banc*). And when a *habeas* petitioner could have raised a claim on direct appeal, but didn't, those claims are barred. Application of this principle serves to bar Johnson's first, second, and fifth claims.

Johnson's first claim alleges that his due process rights were violated by police tampering with and fabricating evidence and failing to secure the crime scene. Dkt 1 at 6; Dkt 1-2 at 5. Johnson's second claim alleges that his Fourteenth Amendment rights were violated by an unreasonable search and seizure, and by the police arresting him without probable cause. Dkt 1 at 6–7; Dkt 1-2 at 6–7. Johnson's fifth claim alleges that the prosecutor gave false and misleading impressions to the jury during opening and closing arguments. Dkt 1 at 10–11; Dkt 1-2 at 8–9.

11

The state court found Johnson's first, second, and fifth claims to be procedurally defaulted because he could have raised them on direct appeal but did not. Dkt 12-32 at 91. The Texas Court of Criminal Appeals later adopted the state *habeas* court's findings and denied Johnson's application. Dkt 12–29 at 1. Based on this procedural history, Johnson's first, second, and fifth claims are now procedurally barred. *Gardner,* 959 SW2d at 192.

This procedural bar to federal review may be overcome by demonstrating "(1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider his claims will result in a fundamental miscarriage of justice." *Smith v Johnson*, 216 F3d 521, 524 (5th Cir 2000) (internal quotation marks and citation omitted). Johnson doesn't make this showing. He tries instead to meet this standard by arguing that his appellate counsel was ineffective for failing to raise his first, second, and fifth claims on direct appeal, thus causing the default. Dkt 16 at 3. But Johnson didn't exhaust such an ineffective assistance of counsel claim before the Texas Court of Criminal Appeals, so it cannot serve as cause to overcome the procedural default. *Edwards v Carpenter*, 529 US 446, 452 (2000); *Murray v Carrier*, 477 US 488-89 (1986). He can't show *cause* because state court records reflect that he could and should have raised these claims as part of his direct appeal.

Johnson also fails to make a showing of actual innocence. See *Rocha*, 619 F3d at 402; *Sawyer v Whitley*, 505 US 333, 339–40 (1992). He hasn't produced "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"—sufficient to persuade the district court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v Delo*, 513 US 298, 324, 329 (1995); see also *McQuiggin v Perkins*, 569 US 383, 386 (2013); *House v Bell*, 547 US 518, 536–38 (2006). Thus, he can't show *cause* by showing that failure to consider his claims will result in a fundamental

12

miscarriage of justice." *Smith,* 216 F3d at 524.

Because no showing of *cause* is made, the inquiry into *actual prejudice* needn't be considered. See *Saahir v Collins*, 956 F2d 115, 118 (5th Cir 1992). Johnson's first, second, and fifth claims for federal review on *habeas corpus* will be dismissed as procedurally barred.

> b.  Claims 3, 4, 6, 7 & 8: Ineffective assistance of counsel

Johnson's remaining claims are based on ineffective assistance of trial counsel. Johnson alleges failures by his trial counsel to:

- o  Hire a forensic expert to assist with the defense;

- o  Properly question a juror during *voir dire*;

- o  Object to the prosecutor's misleading statements during opening and closing;

- o  File a motion to suppress the pill bottle, which was not properly secured or preserved; and

- o  File a motion to suppress the cocaine, which was obtained through illegal search and seizure.

Johnson must demonstrate both *deficient performance* and ensuing *prejudice* to establish ineffective assistance by his trial counsel. See *Strickland v Washington*, 466 US 668 (1984); see also *Charles v Stephens*, 736 F3d 380, 388 (5th Cir 2013). "Both the *Strickland* standard and the AEDPA standard are highly deferential, and when the two apply in tandem, review is doubly so." *Charles*, 736 F3d at 389 (internal quotations and citation omitted); see also *Harrington*, 562 US at 105.

To establish *deficiency*, the petitioner must show that the performance by trial counsel fell below an objective standard of reasonableness based on "prevailing norms of practice." *Loden v McCarty*, 778 F3d 484, 494 (5th Cir 2016); see also *Kitchens v Johnson*, 190 F3d 698, 701 (5th Cir 1999). In that regard, courts should be "highly deferential" to counsel. *Strickland*, 466 US at 689. This

means that "counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." Id at 690. This is particularly true as to "strategic choices made after thorough investigation of law and facts relevant to plausible options," which are "virtually unchallengeable." Id at 690–91; see also *United States v Jones*, 287 F3d 325, 331 (5th Cir), cert denied, 537 US 1018 (2002). "*Strickland* does not require deference to those decisions of counsel that, viewed in light of the facts known at the time of the purported decision, do not serve any conceivable strategic purpose." *Moore v Johnson*, 194 F3d 586, 615 (5th Cir 1999). But beyond this, the Fifth Circuit has described the deficient-performance standard as requiring counsel to have "blundered through trial, attempted to put on an unsupported defense, abandoned a trial tactic, failed to pursue a reasonable alternative course, or surrendered his client." *Jones*, 287 F3d at 331.

To establish *prejudice*, the petitioner must show a reasonable probability that—absent the deficient performance—the outcome of the proceedings would have been different. *Reed v Stephens*, 739 F3d 753, 773 (5th Cir 2014), quoting *Strickland*, 466 US at 687. In this context, a *reasonable probability* is one that is sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 US at 694.

On federal *habeas* review, this Court is mindful that "*Strickland* does not allow second guessing of trial strategy and must be applied with keen awareness that this is an after-the-fact inquiry." *Granados v Quarterman*, 455 F3d 529, 534 (5th Cir 2006). In other words, simply because counsel's strategy was not successful does not mean counsel's performance was deficient. *Avila v Quarterman*, 560 F3d 299, 314 (5th Cir 2009).

           i. Claim 3: Failure to call a forensic expert

Johnson asserts that a forensic expert would have benefited his case, with exculpatory evidence that would

14

have revealed the truth of the matter and would have created reasonable doubt as to his being in possession of the pill bottle with crack cocaine. He maintains that none of his fingerprints were found on the pill bottle nor was it tested for DNA. Dkt 1-2 at 29.

Trial counsel testified in her affidavit to the state *habeas* court as follows:

> I am Lydia Clay-Jackson, a licensed attorney in the State of Texas and I make this affidavit in good faith upon order of this Court.
>
> COMES now trial attorney for the above Applicant, who in response to the Court's order complies herein as follows:
>
> (1) Did you consider hiring an expert or seeking funds to hire an Expert to conduct an independent analysis of the pill bottle containing cocaine for purposes of evaluating whether the Applicant's fingerprints or DNA were present on the bottle? Please explain.
>
> (2) If you sought an expert opinion regarding fingerprints or DNA on the pill bottle, why [d]id you choose not to call that person as a Witness during trial?
>
> (3) If you did not seek an expert opinion, please explain that decision.
>
> . . .
>
> RESPONSE:
>
> The conversations with Applicant, in trial preparation, I was convinced that any forensic testing would not provide evidence that could have been used against us in trial. From the conversation with the Applicant and the witness, he provided it was my opinion that our witness would provide the reasonable doubt. It was not

15

> anticipated that the witness would turn against her friend. The witness was steadfast in her assertion that Applicant had nothing to do with the drugs found in the house.
>
> . . .
>
> Given hindsight, having the pill bottle tested may have better advanced the theory of defense at Applicant's trial.

Dkt 12-32 at 67–68.

In denying this claim, the state *habeas* court found:

> 8. Conroe Police Officers Dawn Leggett and Raymond Adams provided credible testimony at trial.
>
> 9. No evidence suggests that officers tampered with, fabricated, or "planted" evidence in this case.
>
> 10. The applicant has not established that a forensic expert was available to testify during trial or that the expert would have testified in a manner beneficial to the defense.
>
> 11. Evidence demonstrating that the applicant's DNA was absent from the pill bottle containing crack cocaine would not have changed the outcome of this case.

Dkt 12-32 at 91. That court concluded, "The applicant has failed to establish that he was denied his constitutional right to the effective assistance of counsel during trial. See *Strickland v Washington,* 466 US 668, 687 (1984)." Dkt 12-32 at 92.

"To prevail on an ineffective assistance of counsel claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *Gregory v Thaler*, 601 F3d 347, 352 (5th Cir

16

2010); see also *Sayre v Anderson*, 238 F3d 631, 635–36 (5th Cir 2001). The Fifth Circuit makes clear that such "complaints based upon uncalled witnesses" are "not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and that speculations as to what these witnesses would have testified is too uncertain." *Alexander v McCotter*, 775 F2d 595, 602 (5th Cir 1985) (citations omitted). And to satisfy *Strickland*'s prejudice requirement under such circumstances "the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." Ibid (citations omitted).

Counsel made a strategic decision not to call a forensic expert. She spoke with Johnson in trial preparation, and she was convinced that any forensic testing would not provide evidence that could have been used against Johnson. This was related in part to a tactical decision by trial counsel to have another witness, Gloria Cumpian, provide the reasonable doubt. Cumpian had been steadfast in her assertion that Johnson had nothing to do with the drugs found in the house. Counsel didn't anticipate that Cumpian would turn against her friend, Johnson.

During her cross-examination of Officer Adams, counsel focused on questions regarding the chain of custody as to the pill bottle; training in the military; the 600 hours of training required to be an officer; how to preserve evidence; collection of the pill bottle; the failure to collect the rag and toilet paper roll; and the failure to include information in the police report. See Dkt 12-19 at 62–97. The record indicates that Johnson's trial counsel was prepared for trial and was very familiar with the evidence and witnesses.

There was no trial testimony or evidence that Johnson's fingerprints or DNA were on the pill bottle. Rather, testimony was heard that a DNA test was not requested and that fingerprints were not found on the pill bottle. Dkt 12-19 at 207. Officer Leggett saw Johnson

17

throw the pill bottle on the floor as she pursued him in the kitchen. She saw that the pill bottle was full of cocaine. Id at 112–13. She confirmed that the bottle retrieved from the adjacent room was the same bottle she initially saw in Johnson's hand. Id at 118.

On cross-examination of Officer Leggett, counsel questioned the importance of detail in the police report; her 25 years of experience; duties as primary officer; the failure to mention cocaine in report; failure to recall if she saw Officer Adams retrieve the pill bottle; whether she handled the pill bottle with her bare hands; whether she retrieved the rag and toilet paper roll; the failure to mention in the report that the pill bottle was ever lost; and the failure to mention in her report that there was a romantic relationship between Gloria Cumpian and Anthony Johnson. Dkt 12-19 at 127–80, 185.

Counsel's strategy was to show there were other pill bottles in the house; that Officer Leggett did not maintain control over the pill bottle seized during the arrest; and that the pill bottle recovered from the adjacent room was not the same as that found during the arrest. Trial counsel highlighted to jurors in closing argument how little physical evidence connected Johnson to the pill bottle. Dkt 12-20 at 46–51.

"To support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast a pervasive suspicion of doubt than to strive to prove a certainty that exonerates." *Harrington v Richter*, 562 US 86, 109 (2011). Counsel's treatment of forensic evidence was reasonable, and her decision to not call a forensic expert resulted in no *Strickland* prejudice.

As noted above, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable. *Gregory*, 601 F3d 347, 352 Here, Johnson neither identified an expert witness nor made any showing that testimony by an

18

expert on the issue of fingerprints or DNA would have been favorable to his defense.

At base, Johnson maintains that he never had possession of the pill bottle, but beyond that are only conclusory allegations. He fails to demonstrate that trial counsel's strategy was ill-chosen. And Johnson hasn't shown how an additional expert's involvement would have had any effect on the outcome of the trial. As such, he hasn't demonstrated that his trial counsel was ineffective or that the state *habeas* court's rejection of this claim was unreasonable or contrary to federal law.

This claim will be dismissed.

### c.   Claim 4: Failure to question venireperson

Johnson's fourth claim alleges that his trial counsel was ineffective for failing to properly question a prospective juror during *voir dire*. Dkt 1 at 8–9; Dkt 1-2 at 7–8. Johnson alleges that further questions would have revealed a bias of the juror.

Margaret Dalgleish was selected to serve on the jury. Dkt 12-18 at 140. The following exchange took place outside the jury's presence after the State had called its first witness:

> THE COURT: Just for the record, would you give us your name?
>
> JUROR: Margaret Dalgleish.
>
> THE COURT: And your employer is the Conroe Police Department?
>
> JUROR: Yes.
>
> THE COURT: And you're a records clerk?
>
> JUROR: I enter arrests. I get subpoenas, put them together.
>
> THE COURT: Okay. Based on your employment, are you able to -- and your knowledge of these officers that may be testifying in this particular case, are you

able to set that aside and make a judgment base solely on the evidence that's presented to you in this particular case?

JUROR: I think so. I mean, I've never been in this position. I don't want to mess anything up.

THE COURT: Sure. If you're instructed that you're to follow the law, follow your oath to make a decision based solely on the evidence and the law presented to you in this case, are you able to do that?

JUROR: Yes.

THE COURT: Would you be able to find this defendant not guilty if the State did not prove their case beyond a reasonable doubt?

JUROR: Yes.

THE COURT: Okay. Thank you, ma'am. You can go on back.

(Juror excused)

MS. CLAY-JACKSON: Judge, I would ask that she be struck because I specifically asked, "Is there anything that would cause you -- that I haven't asked you about." And she did not, at this point, be as straightforward as she was here. The way that she hesitated, I think the Court recognized that and indicated that she -- the difficulty would be in giving other people the benefit of the doubt, giving the benefit of the doubt to the officers. I would ask that she be struck and the alternate --

MR. TEISSIER: Judge, she indicated she can follow the law if the evidence -- the Court presented to her if the evidence is not proven beyond a reasonable doubt – doesn't prove the case beyond a reasonable doubt,

she said she'd find the defendant not guilty.
I think that's –

THE COURT: I'm going to take her on
her word that she can follow the law, and
she can render a verdict according to the
evidence and the law presented in this
case.

Dkt 12-19 at 55–57.

Counsel testified the following in her affidavit to the
state *habeas* court:

(4) Please explain why you did not
question prospective juror Dalgleish about
possible bias after it was revealed on her
juror questionnaire that she worked for the
Conroe Police Department.

RESPONSE:

Questioning Dalgleish would not have
advanced the theory of the defense and it
was determined that a preempt would be
used.

Dkt 12-32 at 67–68. The state *habeas* court found, "Juror
Margaret Dalgleish credibly established at trial that she
was not biased and would fairly evaluate the evidence,
despite her employment at the Conroe Police Department
as a records clerk." Dkt 12-32 at 91. See Dkt 12-19 at 56.

In the context of determining whether the failure to
strike an allegedly partial juror constitutes deficient
performance, a court must first evaluate whether the juror
at issue was actually biased. *Virgil v Dretke*, 446 F3d 598,
608–10 (5th Cir 2006); see also *Seigfried v Greer*, 372 F
Appx 536, 539 (5th Cir 2010) (unpublished). The bias
determination centers on a juror's own indication that he
has "such fixed opinions that he could not judge impartially
respondent's guilt." *Patton v Yount*, 467 US 1025, 1035
(1984); *Virgil*, 446 F3d at 607 (holding that "the Supreme
Court's treatment of the right to an impartial jury is more
than a mere backdrop to our analysis; it is the lens through

21

which we must examine counsel's performance in this case") (citation omitted). It is Petitioner's burden to prove that a biased juror served on his jury. See *Smith v Phillips*, 455 US 209, 215 (1982) (stating that prospective jurors are presumed impartial).

Johnson hasn't shown that juror Dalgleish had a bias that could have been revealed by additional questions by trial counsel. True, he does argue prejudice as to counsel's failure to strike Dalgleish because she worked for the Conroe Police Department. But he offers no evidence or argument to substantiate his claim that juror Dalgleish was biased. The burden is on Petitioner to show that he is entitled to relief, and the Fifth Circuit has consistently held that a petitioner's conclusory, self-serving allegations will not merit *habeas* relief. *Beazley v Johnson*, 242 F3d 248, 270 (5th Cir 2001) (conclusory allegations will not support federal *habeas* relief); *Fahle v Cornyn*, 231 F3d 193, 196–97 (5th Cir 2000) (self-serving allegations do not merit relief); see also Rule 2(c) of the Rules Governing Section 2254 Cases (requiring petitioner to plead facts in support of his claims).

The record in no way demonstrates that Dalgleish had "such fixed opinions that [she] could not judge impartially [Petitioner]'s guilt." *Patton*, 467 US at 1035; *Virgil*, 446 F3d at 608–10. While expressing concerns during individual questioning about her employment with the Conroe Police Department, Dalgleish ultimately confirmed that she could listen to the evidence and render a verdict based solely on the evidence presented at trial. Dkt 12-19 at 55–57. She also confirmed that she would not lower the State's burden of proof based on her initial apprehension. Thus, contrary to Johnson's assertion, counsel's failure to strike juror Dalgleish did not result in a biased juror being allowed onto the jury.

In sum, Johnson has not pointed to any evidence rebutting counsel's factual assertions, much less demonstrated that the state court's ruling on trial counsel's performance "was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 US at 103. Consequently, viewing this allegation under the deferential standard that applies on federal *habeas* review, Johnson has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his ineffective assistance claim. This claim will be dismissed.

> d.   Claims 6, 7 & 8: Failure to object and to file motions to suppress

Johnson's sixth claim alleges that his trial counsel was ineffective for failing to object to the prosecutor's misleading statements during opening that there is no police procedure for someone jumping out a window of an unsecured house, and statements during closing that twenty-three grams of crack cocaine is a "ton of crack." Dkt 1 at 10–11; Dkt 1-2 at 9. His seventh and eighth claims allege that his trial counsel was ineffective for failing to file a motion to suppress the pill bottle and the cocaine. Dkt 1 at 12–14; Dkt 1-2 at 10–11.

The state *habeas* court found:

> 8.   Conroe Police Officers Dawn Leggett and Raymond Adams provided credible testimony at trial.
>
> 9.   No evidence suggests that officers tampered with, fabricated, or "planted" evidence in this case.
>
> . . .
>
> 13.   No testimony established that the Conroe Police Department has a designated procedure for how to handle a situation where, as in this case, a limited number of officers are attempting to control a residence containing several people, and a person breaks a window and runs away.
>
> 14.   The prosecutor's argument that the pill bottle contained "a ton of crack cocaine"

23

was hyperbolic and not intended to mislead
the jury.

Dkt 12-32 at 91.

i.   Failure to object to argument

In claim six, Johnson faults counsel for not objecting to
the prosecutor's arguments. Trial counsel's strategy was to
question the chain of custody over the pill bottle. Through
her cross-examination of witnesses, she emphasized that Officer
Leggett didn't maintain control over the pill bottle
at all times. Dkt 12-19 at 169–72. Counsel argued that
Officer Leggett was negligent in leaving the pill bottle
unattended when she took Johnson out of the house after
hearing broken glass. Dkt 12-20 at 48–50.

In his opening argument, the prosecutor anticipated
counsel's strategy and stated:

> They are continuing to detain the
> defendant, make sure he is arrested safely.
> And as they are doing that, Officer Adams
> goes to sweep a room that's behind him.
> He's got his flashlight. He's got his firearm
> ready. He's making sure this location is
> safe. And what happens is there is a giant
> crash in the room where all those people
> were. And it turns out -- and they didn't
> know the time -- but someone jumped out
> the window and started running, just
> running down the street. Officer Leggett
> initially thinks shots are fired. That's how
> loud and confusing and, frankly, scary that
> was for them. So she does what I think all
> us expect her to do is go outside with
> Anthony Johnson to keep him safe, to keep
> herself safe. Officer Adams doesn't know
> what just happened. So he goes outside to
> check. And he sees that someone's been
> running down the street, another officer
> already pursuing. And he joins the pursuit.
> They don't know if that person is armed, if

24

they have narcotics. They don't know if he's a threat to the community. So he's going to chase him, of course. That's what we expect officers to do. What happens is during this whole commotion that pill bottle is still sitting on the counter. And it takes a few minutes for the whole situation to die down. But eventually Officer Leggett realizes when she gets back in the house that the pill bottle that was full -- full of crack cocaine that was in his hands has been moved. And they determine that no officer moved it. And after she speaks with people in the house, she goes into that room where everybody else was sitting. And she sees it sitting right there on the shelf. She looks at the same pill bottle. She looks inside. She looks inside, and it's the same amount of crack cocaine as before, the same amount that was in his hands when she first came to the door and knocked on the door and he came to the door. There's going to be no procedure for something like that happening, someone jumping out of a window in an unsecured house. This all happens in a span of about four to five minutes. That's how fast it was. And this was a confusing situation. And there is no procedure for it. And there is nothing the officers did that we can look back on and say I blame you for doing that. They acted on their instincts, and you're going to see that. And ultimately the bottom line is that this pill bottle with 22 grams of crack cocaine was in his hand at the front door when they first made contact. And ultimately you're determining whether he knowingly possessed it. I'm going to show you that the evidence today is going to

25

> prove to you that he knowingly possessed
> it, and there's not going to be any
> reasonable doubt of what he possessed and
> when he possessed it.

Dkt 12-19 at 9–11.

Johnson also complains in this regard about the prosecutor's closing argument. Throughout trial, counsel questioned whether the bottle retrieved from the adjacent room was the same pill bottle Officer Leggett saw when Johnson opened the door. Both Officer Leggett and Officer Adams testified that the bottle was full of cocaine.

During his closing argument, the prosecutor stated:

> And good defense attorneys, what they do is they bring up those kind of things to distract you, to misdirect you. Because if you think about the evidence that we do have in this case, the evidence that goes right to the charge to whether he is guilty or not guilty -- if you think about this, the 23 grams of crack cocaine, now this is the closest you've got to it. That's a ton of crack cocaine. And that was in this bottle. That was in his hands, State's Exhibit 9. You've seen that already. If you focus on that, the State's proven its case beyond a reasonable doubt. No issue whatsoever. But they try to distract you, get you focused on other things that are not in the charge. They are not relevant to get you away from that. But you're smart enough to realize when an officer sees the defendant come to the door with that bottle in his hand with a ton of crack cocaine in that bottle that a person is guilty of that offense. When that person is in a drug house, and he's been there before even Gloria showed up, he's guilty of that offense. He knowingly possessed it.
>
> . . .

26

First of all, the safety of the other officers and people involved, that's their priority. But once that died down, they found this same bottle they had earlier. And I want you to consider just how Gloria Cumpian reacted when she looked at this. She described the cocaine she had. You recall that, right? She said it was less than that. When she saw this, she was taken back. This an unmistakable amount of cocaine. This is a lot of crack cocaine. There's not going to be multiple bottles with this much crack cocaine in a house like that because you see the reaction of someone who uses crack cocaine. When she sees this much, wow, that's a lot. There's not more bottles of that there. You're not going to have the bottle that he had in his hand full of crack cocaine and some other bottle that the officers recovered later with that much amount of crack cocaine in it. That doesn't make sense. That doesn't even make sense. And when we talk about proving this case beyond a reasonable doubt and proving that he knowingly possessed crack cocaine, you can consider that everybody in that house had knowledge of what was going on. Everybody in that house knew it was crack cocaine there. And if they are going to party and use it together, they are all having care, custody, and control of it. In essence, everybody was guilty of this offense in that house. But your job is even easier than that. All you have to deal with is this defendant here. And you've heard in court from -- you've heard about two people, basically: The defendant and Gloria Cumpian. Two guilty people here. She

27

admitted it on the record. But your job is to find him guilty because we've proven our case beyond a reasonable doubt because we've proven to you that he answered the door with a bottle of 23 grams of crack cocaine in his hand. He dropped it on the ground. It was recovered, looked at. And it's the same bottle, State's Exhibit 9, that was found later with 23 grams of crack cocaine. Case closed. We've proven our case beyond a reasonable doubt. And I trust when you go back there and start deliberating, you're going to look at the evidence, fairly, and impartially. But you're going to follow the law and find him guilty . . .

Dkt 12-20 at 53–57.

In Texas, proper prosecutorial jury argument consists of (i) a summation of the evidence, (ii) a reasonable deduction from the evidence, (iii) a response to an opponent's argument, or (iv) a plea for law enforcement. *Hughes v Quarterman*, 530 F3d 336, 347 (5th Cir 2008); *Ward v Dretke*, 420 F3d 479, 497 (5th Cir 2005). Improper jury argument is a basis for federal *habeas* relief only if it is so prejudicial as to render the trial fundamentally unfair. *Darden v Wainwright*, 477 US 168, 182–83 (1986); *Hughes*, 530 F3d at 347, quoting *Harris v Cockrell*, 313 F3d 238, 245 (5th Cir 2002). Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or the evidence was so insubstantial that in probability but for the remarks no conviction would have resulted. *Geiger v Cain*, 540 F3d 303, 308 (5th Cir 2008); *Hughes*, 530 F3d at 347, quoting *Harris*, 313 F3d at 245.

Here, Johnson fails to show that objections or motions would have been successful. Indeed, he hasn't established that the prosecutor's comments during opening and closing even warranted objections. As such, Johnson hasn't

28

overcome the strong presumption in favor of finding that trial counsel rendered inadequate assistance and that the challenged conduct was the product of reasoned trial strategy. See *Strickland*, 466 US at 689; *Wilkerson*, 950 F2d at 1064. He also fails to meet his burden to affirmatively prove that his counsel's actions prejudiced his trial or that but for counsel's errors, the result of the proceeding would be different. See *Strickland*, 466 US at 693–94.

Having independently reviewed the entire record from Johnson's trial, the Court concludes the state *habeas* court reasonably construed all the prosecutorial arguments identified by Johnson as proper inferences or summaries drawn from the evidence. None of the prosecution's closing jury arguments identified by Johnson—whether viewed individually or collectively—rendered the guilt/innocence phase of his trial fundamentally unfair. In the same manner, the Court independently concludes that no reasonable probability exists that the outcome of the guilt/innocence phase of Johnson's trial would have been different but for the failure of Johnson's trial counsel to object to any or all the prosecutorial jury arguments identified in this claim.

Given that nothing was objectionable or prejudicial about any of the prosecution's opening or closing arguments, Johnson's complaints about his trial counsel's failure to object to those arguments satisfies neither prong of *Strickland*. *Paredes*, 574 F3d at 291. Trial counsel has broad discretion when it comes to determining the best strategy. See *Clark v Thaler*, 673 F3d 410, 427 (5th Cir 2012) (recognizing broad deference to which counsel is entitled in making tactical decisions in closing argument "because of the broad range of legitimate defense strategy at that stage"). Decisions on whether to object or not during closing argument are matters of trial strategy that are presumed reasonable under *Strickland*. *Wiley v Puckett*, 969 F2d 86, 102 (5th Cir 1992). And trial counsel can't be said to have been ineffective for not making an objection

that would have been denied. See *Clark v Collins*, 19 F3d 959, 966 (5th Cir 1994); *Green v Johnson*, 160 F3d 1029, 1037 (5th Cir 1998).

Johnson fails to meet his burden to affirmatively prove his counsel's failure to object prejudiced his trial or that but for counsel's errors, the result of the proceeding would be different. See *Strickland*, 466 US at 693–94.

This claim will be dismissed.

### ii.    Failure to suppress evidence

In claims seven and eight, Johnson argues that he was denied effective assistance of counsel because trial counsel failed to seek suppression of the evidence seized during his arrest.

To have standing to seek to suppress evidence on the ground that it was obtained in an unconstitutionally unreasonable search and seizure, a defendant must show that he had a reasonable expectation of privacy violated by the government. *Rakas v Illinois*, 439 US 128, 139–40 (1978). "A defendant bears the burden of establishing standing to challenge a search under the Fourth Amendment—that he has 'a privacy or property interest in the premises searched or the items seized which is sufficient to justify a "reasonable expectation of privacy" therein.' Standing 'is a personal right which cannot be asserted vicariously.'" *United States v Pierce*, 959 F2d 1297, 1303 (5th Cir 1992) (internal citations omitted), cert denied, 506 US 1007 (1992); see also *Granados v State*, 85 SW3d 217, 223 (Tex Crim App 2002) (defendant has burden to show subjective expectation of privacy in place searched that society is prepared to recognize as reasonable).

Furthermore, failing to file a suppression motion is not *per se* ineffective assistance of counsel. *Kimmelman v Morrison*, 477 US 365, 384 (1986). A determination of ineffectiveness "depends on whether either a suppression motion or an objection would have been granted or sustained had it been made." *United States v Oakley*, 827 F2d 1023, 1025 (5th Cir 1987). Additionally, the defendant

must show counsel's inaction amounts to deficient representation and actually prejudiced the defense. *Strickland*, 466 US at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 US at 693. Actual prejudice in the context of an unfiled suppression motion requires a meritorious Fourth Amendment violation and "a reasonable probability that the verdict would have been different" absent the excludable evidence. *Kimmelman*, 477 US at 375.

Johnson hasn't shown that he had a subjective expectation of privacy in the search of the home located at 403 Avenue J. As such, he lacked standing to challenge the search or search warrant. Additionally, Officer Leggett testified that she saw the pill bottle in Johnson's hand when he opened the door and that he threw it on the floor. Investigator Horn testified that he didn't recover any fingerprints from the pill bottle. He described the process for obtaining latent fingerprints. He said that such prints are fragile and can be easily destroyed. Dkt 12-19 at 196. During her cross-examination of Officer Adams, she alluded to the possibility that the prints were damaged when he lifted the bottle with a rag. Counsel tried to prevent the introduction of the pill bottle into evidence. Her objection was overruled. Dkt 12-19 at 39–40.

Any additional suppression motion or challenge by trial counsel would have been meritless. Lacking standing to object to the search or search warrant, Petitioner can't show that trial counsel's performance was deficient or that prejudice resulted from trial counsel's performance. See *Kimmelman*, 477 US at 375; *Oakley*, 827 F2d at 1025; see also *Green v Johnson*, 160 F3d 1029, 1037 (5th Cir 1998) (because failure to make frivolous objection doesn't cause counsel's performance to fall below objective level of reasonableness, petitioner hasn't established deficient performance); see also *Johnson v Cockrell*, 306 F3d 249, 255 (5th Cir 2002) (concluding that counsel is not required to make futile motions or frivolous objections).

31

This claim will be dismissed.

As to claims six, seven, and eight together, the Court finds that Johnson hasn't shown that the state *habeas* court's denial of such claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Williams*, 529 US at 402–03; *Childress v Johnson*, 103 F3d 1221, 1224–25 (5th Cir 1997). Johnson fails to show that the state court's application of the *Strickland* standard was unreasonable and that there was no reasonable basis for the state court to deny relief. *Richter*, 562 US at 101.

As such, Johnson's claims six, seven, and eight will be dismissed.

4.   Motion for evidentiary hearing

Johnson seeks an evidentiary hearing as to his challenge to his conviction and sentence. Dkt 16 at 4.

28 USC § 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing   evidence   that   but   for

32

> constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

This reflects a congressional intent "to avoid unneeded evidentiary hearings" in federal *habeas corpus* proceedings. *Williams v Taylor*, 529 US 420, 436 (2000). The reviewing court thus has discretion to reject the need for an evidentiary hearing. See *Conner v Quarterman*, 477 F3d 287, 293 (5th Cir 2007), citing *Roberts v Dretke*, 381 F3d 491, 497 (5th Cir 2004). Rule 8 of the Rules Governing Section 2254 Cases states, "If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require."

A federal *habeas corpus* petitioner can have an evidentiary hearing if a genuine factual dispute exists and the state hasn't afforded a full and fair hearing. *Clark v Johnson*, 202 F3d 760, 766 (5th Cir 2000), quoting *Perillo v Johnson*, 79 F3d 441, 444 (5th Cir 1996). A petitioner isn't entitled to a federal evidentiary hearing "if his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" *Young v Herring*, 938 F2d 543, 560 (5th Cir 1991), quoting *Blackledge v Allison*, 431 US 63, 74 (1977); see also *Washington v Davis*, 715 F Appx 380, 385 (5th Cir 2017, *per curiam*).

Johnson presents nothing but conclusory assertions that he didn't possess the cocaine. An evidentiary hearing isn't necessary where nothing establishes a pertinent factual dispute that requires development in order to assess the claims. *Robison v Johnson*, 151 F3d 256, 268 (5th Cir 1998) (internal quotations omitted). To the contrary, all issues raised in this case can be and have been resolved based on the pleadings.

The motion for evidentiary hearing will be denied. Dkt 16.

### 5.   Certificate of appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 USC § 2253(c)(2). This requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v McDaniel*, 529 US 473, 484 (2000). Where the court denies relief based on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and that they "would find it debatable whether the district court was correct in its procedural ruling." Ibid.

The Court finds that reasonable jurists wouldn't find this Court's assessment of the constitutional claims debatable or wrong. As such, Johnson hasn't made the necessary showing to obtain a certificate of appealability.

A certificate of appealability will be denied.

### 6.   Conclusion

The pleadings and state court records show that the federal petition for a writ of *habeas corpus* brought by Petitioner Anthony Deon Johnson lacks merit.

The motion by Respondent Bobby Lumpkin for summary judgment is GRANTED. Dkt 11.

The petition by Johnson for a writ of *habeas corpus* is DENIED. Dkt 1.

The motion by Johnson for an evidentiary hearing is DENIED. Dkt 16.

Any other pending motions are DENIED AS MOOT.

This case is DISMISSED WITH PREJUDICE.

A certificate of appealability is DENIED.

SO ORDERED.

Signed on September 30, 2022, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge